UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SAREGAMA INDIA LTD.,                              :
                                                  :
                              Plaintiff,          :
                                                  :
               -against-                          :
                                                  :
  BHARATH AIYER, *et al.*,                        :
                                                  :
                              Defendants.         :
                                                  :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/3/2025

1:25-mc-30-GHW

<u>MEMORANDUM OPINION &</u>
<u>ORDER</u>

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

Bharath Aiyer, an associate partner at McKinsey and Company, has a problem to solve:  an $11 million-plus judgment against him.  This action involves one effort by his creditor, Saregama India, Ltd. ("Saregama"), to collect on that judgment.  Saregama froze the assets in some of Mr. Aiyer's bank accounts in New York.  Mr. Aiyer claimed that a portion of those funds was exempt from restraint.  Saregama objected to Mr. Aiyer's claimed exemptions.  The Court issued an order denying one of Mr. Aiyer's claimed exemptions.

The Court's order rested in part on its determination that Saregama's objection had been filed timely under New York Civil Practice Law and Rules ("C.P.L.R.") Section 5222-a(d).  That statute establishes an eight-day window within which a judgment creditor must serve its objections to an exemption claimed by a debtor.  Because Saregama's certificate of service showed that the objections had been served on June 18, 2025—within eight days of the date on which the Court understood the eight-day window to have begun—the Court concluded that Saregama's objection was timely.

Mr. Aiyer has moved for the Court to reconsider that decision.  Principally, he argues that the objections were not served on June 18, 2025—the date specified in the certificate of service—

but, rather, on June 20, 2025—the date on which USPS internal tracking records first reported that the filing was in the possession of USPS. If the service date was June 20, rather than June 18, Saregama's objections would have fallen two days outside of the eight-day window for service established by the statute. However, because the date on which papers are placed in the mail establishes the date of service, rather than the date of postmark, or the date on which USPS first acknowledged receipt of the package, Mr. Aiyer has not rebutted the presumption that service was effectuated on June 18, 2025. The objections were, therefore, timely. As a result, Mr. Aiyer's motion for reconsideration is DENIED.

## II.    BACKGROUND

Saregama is "one of the largest music recording and publishing companies in India . . . ." *Saregama India, Ltd. v. Aiyer*, 720 F. Supp. 3d 1306, 1308 (N.D. Ga. 2023).[1] Saregama sued Mr. Aiyer, his brothers and his father, all individually and doing business as ASV Cyber Solutions, Inc., "asserting claims for direct and vicarious copyright infringement, violations of the Lanham Act, and common-law unjust enrichment." *Id.* Mr. Aiyer did not appear to defend himself in the action, and eventually a default judgment was entered against him in the amount of $11,120,000. *Id.* "The judgment has remained unsatisfied." *Id.* After years living abroad, Mr. Aiyer returned to the United States in 2019 to take a position as an associate partner at McKinsey and Company in San Francisco. NDGA Dkt. No. 40-1, at 4. Since then, he has had to confront the consequences of the pending judgment against him.

Saregama filed this matter on January 15, 2025 to register its judgment against Mr. Aiyer in this district. Dkt. No. 1. On March 18, 2025, Saregama served a restraining notice on HSBC Bank

---

[1] The background facts regarding the action that resulted in the underlying judgment against Mr. Aiyer are drawn from a recent opinion of the district court in that case. Information from that opinion is included here merely to provide context for the reader and plays no role in the resolution of this motion. References to NDGA Dkt. No. are to the docket of that action.

("HSBC") in New York City to restrain funds in Mr. Aiyer's bank accounts. Dkt. No. 3-1 ¶ 3; Dkt. No. 3-2 (the "Notice"). The Notice identified two HSBC accounts held by Mr. Aiyer: HSBC Account Nos. 4637 and 4670. The Notice informed HSBC that, pursuant to C.P.L.R. § 5222(b), Mr. Aiyer and HSBC were "forbidden to make or suffer any sale, assignment, transfer or interference with any property" held in the accounts, with limited exceptions. *Id.* at 3.

On June 13, 2025, Saregama received an exemption form from Mr. Aiyer. Dkt. No. 8-1 ¶ 2. Mr. Aiyer claimed an exemption for "income earned in the last 60 days"—one of the categories of exemption that was contained in the pre-printed form. Dkt. No. 3-5, at 3. He also requested an exemption for "health insurance reimbursements," a category that Mr. Aiyer added to the list of permitted exemptions by hand. *Id.* Later, in connection with this motion, Mr. Aiyer affirmed that the postmark on his mailing was June 10, 2025. Dkt. No. 15 ("Aiyer Decl.") ¶ 4.

On June 18, 2025, Saregama filed an objection to Mr. Aiyer's claim that his deposits for "health insurance reimbursements" were exempt. *See* Dkt. Nos. 3-5. In it, Saregama argued that C.P.L.R. § 5222-a(b)(4) enumerated the types of funds that are exempt from restraint, and that "health insurance reimbursement[s]" were not among those listed. Dkt. No. 5, at 4-5. In his supporting affidavit, Saregama's counsel affirmed that he had received Mr. Aiyer's exemption form on June 13, <u>2024</u>. Dkt. No. 3-1 ¶ 9 (emphasis added). Saregama did not provide information regarding the postmark date on the exemption request. Saregama's counsel also submitted a certificate of service, in which he affirmed that he served the objection on Mr. Aiyer and HSBC on June 18, 2025. Dkt. No. 4 (the "Certificate of Service").

On August 14, 2025, the Court issued an order in response to Saregama's objection. Dkt. No. 6 (the "August Order"). In its order, the Court noted that counsel for Saregama had affirmed that he had received the objection on June 13, 2024—a date that was more than a year before the date on which he had filed the objection. As a result, the Court noted that it was inclined to deny

3

the request as untimely.  As the Court explained, "C.P.L.R. § 5222-a(d) provides that a judgment creditor that objects to a claim of exemption 'must serve the banking institution and the judgment debtor with its motion papers within eight days after the date postmarked on the envelope containing the executed exemption form or the date of personal delivery of the executed exemption claim form to the banking institution . . . .'"  August Order at 1-2 (quoting C.P.L.R. § 5222-a(d)).  Because Saregama's counsel had affirmed that the gap between his receipt of the exemption and his filing was more than a year, the Court reasoned, the eight-day deadline established by the C.P.L.R. had not been satisfied.  The Court gave Saregama an opportunity to supplement its briefing to correct any error.  *Id.* at 2.

In response, Saregama filed a short supplemental motion on September 2, 2025.  Dkt. No. 8.  In it, Plaintiff's counsel acknowledged that the "June 13, 2024 date of receipt of the claim of exemption set forth in Plaintiff's original motion papers was an unfortunate error by Plaintiff's counsel."  *Id.* at 2.  Plaintiff's counsel affirmed that he had actually received the exemption on June 13, 2025, rather than June 13, 2024.  Dkt. No. 8-1 ¶ 2.

Mr. Aiyer has not entered an appearance in this case, but he is clearly paying close attention to the docket, for the following day, on September 3, 2025, Mr. Aiyer filed a letter and supporting declaration in response to the motion.  In it, Mr. Aiyer did not argue that his claimed exemption for health care reimbursements was valid.  Instead, he sought "to bring to the Court's attention a factual discrepancy" concerning the date on which Saregama's counsel served the objection.  Dkt. No. 10, at 1.  "This discrepancy is material because under CPLR § 2103(f)(1) and Federal Rule of Civil Procedure 5(b)(2)(C), service by mail is complete upon deposit with the U.S. Postal Service, not when a mailing label is generated."  *Id.* at 2.  Mr. Aiyer attached a USPS tracking log to his declaration, showing that USPS recorded that it was "in possession" of Saregama's objection on June 20, 2025 at 5:05 a.m.  Dkt. No. 12, at 4.  Based on that entry, Mr. Aiyer asked the Court to

4

"[r]ecognize June 20, 2025 as the operative date of service of Plaintiff's motion papers[.]" Dkt. No. 10, at 2. He asked the Court to "[c]onsider the impact of this discrepancy when evaluating the timeliness of Plaintiff's filings." *Id.* While asking the Court to consider this question, Mr. Aiyer's submission contained no additional information regarding the date on which he served the exemption notice on Saregama, including the date of its postmark.

On September 11, 2025, the Court issued an order denying Mr. Aiyer's claimed exemption for "health insurance reimbursement" deposits. Dkt. No. 13 (the "Order"). The Court concluded that the motion had been made timely. That was because Saregama's counsel had affirmed that he had received the exemption form on June 13, 2025. Therefore, regardless of whether Saregama served its objections on June 18, 2025, as it asserted, or June 20, 2025, as Mr. Aiyer presented as an alternative date for consideration, service had been completed within the eight-day window required by the statute. *Id.* at 1-2. So the Court evaluated the merits of Mr. Aiyer's exemption. The Court concluded that the exemption should be denied because "healthcare insurance reimbursement[s]" were not among the "categories of assets that can be designated as exempt" pursuant to C.P.L.R. § 5222-b(4). *Id.* at 2.

Acting once again with alacrity, the very next day Mr. Aiyer filed a motion asking the Court to reconsider its decision. Dkt. No. 14 ("Mot."). Mr. Aiyer argued that the objection was not timely. He presented two reasons for his position. First, Mr. Aiyer argued that the starting date for the calculation should have been June 10, 2025, rather than the June 13, 2025 benchmark date used by the Court in its Order, because he had "signed and deposited [the exemption] with UPS . . . on June 10, 2025" and because the June 10 postmark date was the statutory trigger for the eight-day deadline. *Id.* at 2; Aiyer Decl. ¶ 4. Mr. Aiyer affirmed that the 10th was the date on which he had deposited his objection for mailing and that the package was postmarked on the same day. Aiyer Decl. ¶ 4; Ex. B. Starting the eight-day service window on that date, he argued, would have required

5

service to be completed no later than June 18, 2025. Mot. at 2.

Second, Mr. Aiyer argued that the objection was not served on him until June 20, 2025. *Id.* at 2-3. Mr. Aiyer argued that "service [of the objection] . . . was complete only upon deposit with USPS on June 20, 2025." *Id.* In support of his argument, Mr. Aiyer submitted a copy of the USPS tracking log for Saregama's objection. Aiyer Decl. Ex. A. The log tracked the shipment as it moved through the USPS system. *Id.* Aiyer highlighted one entry on the tracking log, which noted "USPS in possession of item" on June 20, 2025 at 5:05 a.m.:

| | | |
|---|---|---|
| 2:01 am | Destination Facility | DISTRIBUTION CENTER |
| June 25, 2025 | In Transit to Next Facility | |
| June 23, 2025 8:47 pm | Arrived at USPS Regional Facility | QUEENS NY DISTRIBUTION CENTER |
| June 23, 2025 7:51 pm | Departed USPS Regional Facility | WHITE PLAINS NY DISTRIBUTION CENTER |
| June 21, 2025 9:20 pm | Arrived at USPS Regional Origin Facility | WHITE PLAINS NY DISTRIBUTION CENTER |
| June 20, 2025 5:01 pm | Departed Post Office | CROTON ON HUDSON, NY 10520 |
| June 20, 2025 5:05 am | USPS in possession of item | CROTON ON HUDSON, NY 10520 |
| June 19, 2025 | Pre-Shipment, USPS Awaiting Item | |

*Id.* Mr. Aiyer argued that the "record shows that Plaintiff's package was not accepted into USPS custody until **June 20, 2025**, which is the **operative service date** under CPLR § 2103(f)(1) and Fed. R. Civ. P. 5(b)(2)(C)." Aiyer Decl. ¶ 3 (emphasis in original).

In his motion, Mr. Aiyer also requested two factual corrections to the Order pursuant to Federal Rule of Civil Procedure 60(a). Mot. at 1-2. The first related to his request that the Court accept that service had occurred on June 20, 2025 rather than June 18, 2025. *Id.* at 2. Mr. Aiyer also pointed out a typographical error in the Order for correction. *Id.*

On September 22, 2025, Plaintiff's counsel filed a declaration in opposition to Mr. Aiyer's motion. Dkt. No. 19 ("Motta Decl."). Counsel cited his June 18, 2025 certificate of service, in which counsel certified that he served the objection on that date "by depositing [it] in postpaid wrappers, in an official depository under the exclusive care and custody of the U.S. Postal Service."

6

Motta Decl. ¶ 4; *see also* Certificate of Service.  In support of its argument that service was complete

upon deposit in the mail, Saregama pointed to a case in which the "Second Circuit dealt with the

issue of acceptance versus deposit . . . ," namely *Greene v. WCI Holdings Corp.*, 136 F.3d 313 (2d Cir.

1998).  Motta Decl. ¶ 3.  In that case, the Second Circuit held that

> Federal Rule of Civil Procedure 5(b) plainly provides that "[s]ervice by mail is complete
> upon mailing."  The question is what constitutes a "mailing"—is it the placing of an
> envelope in a mail box or the postmarking of it by postal service employees?  Although the
> Second Circuit has not addressed this precise issue, there is nothing in Rule 5(b) or our case
> law to indicate that the date of postmark, or the date of receipt, rather than the date of
> placing it in the mail controls.

*Greene*, 136 F.3d at 315.

Counsel also attached to his declaration copies of the USPS labels that he used to ship the

objection.  Exhibit A to Motta Decl., Dkt. No. 19-1 ("USPS Shipping Labels").  The labels showed

the "print date" and "ship date" for the objections as June 18, 2025:

*Id.*

On September 26, 2025, Mr. Aiyer filed his reply.  Dkt. No. 21 (the "Reply").  In his Reply,

Mr. Aiyer contended that neither the certificate of service nor the USPS Shipping Labels established

that the motion was timely served because "[n]one establish actual deposit in the custody of the

United States Postal Service on June 18, 2025."  *Id.* at 1.  Mr. Aiyer acknowledged that Saregama's

certificate of service created a presumption that service had occurred on June 18, 2025, but he asserted that the USPS tracking log rebutted that presumption. That was because, he contended, the log showed that the documents "were first accepted into USPS custody on June 20, 2025." *Id.* at 4. Mr. Aiyer argued that the USPS Shipping Labels merely established the date on which the labels were printed, not the date of deposit.

Mr. Aiyer argued that Plaintiff's reliance on the Second Circuit's opinion in *Greene* was misplaced because that case involved the application of Federal Rule of Civil Procedure 5(b), rather than C.P.L.R. § 2103(b)(1)—the state statute that establishes the service requirement at issue here. Mr. Aiyer argued that New York law provides that "only actual USPS acceptance—demonstrated by objective tracking data—satisfies CPLR § 2103(f)(1)." Reply at 2-3. He further argued that because New York law requires not only deposit into USPS custody, but also its "acceptance" as demonstrated in documented tracking records, New York law was "stricter" than the federal rule considered by the Second Circuit in *Greene*. *See* Reply at 2-3, 5. Mr. Aiyer's position was not, however, supported by the cases that he cited.[2]

## III.    LEGAL STANDARD

### A.  Motion for Reconsideration

Motions for reconsideration are governed by Local Rule 6.3, which provides that the moving party shall set forth "the matters or controlling decisions which the moving party believes the court has overlooked." "Reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly." *Ortega v. Mutt*, No. 14-cv-9703 (JGK), 2017 WL 1968296, at *1 (S.D.N.Y.

---

[2] Mr. Aiyer's reply brief contains several faulty citations. One of the cases that he cites does not exist. *See* Reply at 6 (citing "*Khurana v. State of N.Y.*, No. 16-cv …. 2019 WL 1430202, at *5 (E.D.N.Y. Mar. 29, 2019)"). Other cases do not contain the quotations that he draws from them. *See, e.g.*, Reply at 2 (citing *F.I. duPont, Glore Forgan & Co. v. Chen*, 41 N.Y.2d 794, 797 (1977)); Reply at 3 (citing *Hosp. for Joint Diseases v. Nationwide Mut. Ins. Co.*, 284 A.D.2d 374, 375 (2d Dept. 2001)). Still other cases do not stand for the propositions for which they are cited. *See, e.g.*, Reply at 3 (citing *Bossuk v. Steinberg*, 58 N.Y.2d 916 (1983)); Reply at 6 (citing *S.E.C. v. McNulty*, 137 F.3d 732, 739-40 (2d Cir. 1998)). Mr. Aiyer also misquotes several statutes in his reply brief, including CPLR § 2103(f)(1) and Fed. R. Civ. P. 69(a)(1). *See* Reply at 2, 5.

May 11, 2017) (quoting *Anwar v. Fairfield Greenwich Ltd.*, 800 F. Supp. 2d 571, 572 (S.D.N.Y. 2011)). As such, reconsideration should be granted only when the moving party "identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 185 (S.D.N.Y. 2016) (internal quotation marks omitted) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)).

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Bartlett v. Tribeca Lending Corp.*, No. 18-cv-10279, 2019 WL 1595656, at *1 (S.D.N.Y. Apr. 12, 2019) (noting that a party moving for reconsideration of a previous order must demonstrate that the Court overlooked "controlling law or factual matters" that had been previously put before it). "A motion to reconsider will not be granted where the moving party is merely trying to relitigate an already decided issue," *Padilla v. Maersk Line, Ltd.*, 636 F. Supp. 2d 256, 258–59 (S.D.N.Y. 2009), because "[r]econsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources," *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009) (internal quotation marks and citation omitted). Ultimately, "[t]he decision to grant or deny a motion for reconsideration rests within 'the sound discretion of the district court.'" *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 352 F. Supp. 3d 242, 246 (S.D.N.Y. 2019) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)).

### B.  Motion for Correction Under Rule 60(a)

Under Fed. R. Civ. P. 60(a), "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the

record." Fed. R. Civ. P. 60(a). "A motion under Rule 60(a) is available only to correct a judgment 'for the purpose of reflecting accurately a decision that the court actually made.'" *Hodge ex rel. Skiff v. Hodge*, 269 F.3d 155, 158 (2d Cir. 2001) (quoting *Truskoski v. ESPN, Inc.*, 60 F.3d 74, 77 (2d Cir. 1995)); *see also* Wright & Miller, 11 Fed. Prac. & Proc. § 2854 (3d ed.) ("a motion under Rule 60(a) only can be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced."). "Rule 60(a) is not meant to provide a way for parties to relitigate matters already decided, to change errors in what a court has deliberately done, or to attempt to establish a right to relief which the court has not previously recognized." *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n. of Nassau Cnty., Inc.*, 956 F. Supp. 2d 402, 409 (E.D.N.Y. 2013) (internal quotation marks and citation omitted). "Errors of a more substantial nature are to be corrected by a motion under Rules 59(e) or 60(b)[,]" rather than a motion under Rule 60(a). Wright & Miller, 11 Fed. Prac. & Proc. § 2854 (3d ed.).

## C.  Relief from Judgment Under Rule 60(b)

"Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence." *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). Rule 60(b)(1) allows the court to issue relief for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Rule 60(b)(1) may be used to correct "legal errors," in addition to factual errors. *Kemp v. United States*, 596 U.S. 528, 533-34 (2022). Moreover, Rule 60(b)(1) "does not limit relief to those instances where the mistake was made on the part of the movant[.]" *U.S. v. Concepcion*, 668 F. Supp. 3d 153, 160 (W.D.N.Y. 2023).

"Rule 60(b)(6) provides a catchall for 'any other reason that justifies relief'" and is only available "when Rules 60(b)(1) through (b)(5) are inapplicable." *Kemp*, 596 U.S. at 533. "Even then, 'extraordinary circumstances' must justify reopening" a case. *Id.* (quoting *Liljeberg v. Health Servs.*

10

*Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988)).

"The burden is on the moving party to demonstrate that it is entitled to relief, and courts generally . . . require that the evidence in support of the motion to vacate a final judgment be highly convincing." *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 182 (2d Cir. 2017) (internal quotation marks and citations omitted); *accord Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 53 (2d Cir. 2021). "[B]ecause vacatur under Rule 60(b) is an equitable remedy, courts may deny Rule 60(b) relief if the moving party is found to have acted inequitably." *Thai-Lao Lignite (Thailand) Co.*, 864 F.3d at 182.

### D.  Evaluating Submissions From Pro Se Litigants

Because Aiyer is proceeding *pro se*, the Court must liberally construe his submissions and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89 (2007) ("A document filed pro se is 'to be liberally construed' . . . " (citation omitted)).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013).

## IV.    DISCUSSION

### A.  Service of Objections to Exemption Claims Under C.P.L.R. 5222

"CPLR article 52 sets forth procedures for the enforcement of money judgments in New York, which may include the imposition of a restraining notice against a judgment debtor's bank account to secure funds for later transfer to the judgment creditor through a sheriff's execution or turnover proceeding." *Cruz v. TD Bank, N.A.*, 2 N.E.3d 221, 223 (2013).  Section 5222 of the C.P.L.R. "authorizes the attorney for the judgment creditor as officer of the court to serve a restraining notice upon any person believed to be holding any property in which the judgment

11

debtor has an interest." *Freeman v. Giuliani*, 2024 WL 4467191, at *2 (S.D.N.Y. 2024). Following service of a restraining notice, "the recipient is prohibited from selling, assigning, or transferring, or interfering with, such property on pain of contempt, except upon direction of the sheriff or upon further order of the court." *Id.*

The ability of a creditor to freeze the bank account of a natural person is subject to limits. "Under both federal and state law, certain types of funds are exempt from restraint or execution, including Social Security benefits, public assistance, unemployment insurance, pension payments and the like." *Cruz*, 2 N.E.3d at 223. "To protect such funds from collection by the judgment creditor and to ensure that accounts containing income from those sources are not inadvertently frozen, the New York legislature passed the Exempt Income Protection Act of 2008 ('EIPA')." *Freeman*, 2024 WL 4467191, at *2.

"C.P.L.R. 5222-a, enacted as part of the EIPA, creates the mechanism of the exemption claim form." *Id.* "The provision restricts the scope of the restraint that can be implemented against the bank account of a natural person and creates a new procedure aimed at ensuring that this class of judgment debtors is able to retain access to exempt funds." *Id.* (cleaned up). "It was added to the C.P.L.R. as part of an effort to protect the exempt income of small debtors." *Id.* (cleaned up).

The statute establishes a timeline for a debtor to claim that funds restrained in a bank account are subject to an exemption. Within two business days after a bank receives a restraining notice from a judgment creditor, "the banking institution shall serve upon the judgment debtor the copy of the restraining notice, the exemption notice and two exemption claim forms." C.P.L.R. § 5222-a(b)(3). To claim an exemption, a judgment debtor must "complete the exemption claim forms . . . and serve them within twenty days of the date postmarked on the correspondence containing the notice and forms." C.P.L.R. § 5222-a(c)(1).

A creditor may object to an exemption claimed by a debtor. The creditor must do so within

an eight-day period that is prescribed by the statute.  A judgment creditor that objects to a claim of exemption

> must serve the banking institution and the judgment debtor with its motion papers within eight days after the date postmarked on the envelope containing the executed exemption claim form or the date of personal delivery of the executed exemption claim form to the banking institution[.]

C.P.L.R. § 5222-a(d).  The statute specifies that the start date for the eight-day period is the date of the "postmark" on the envelope containing the exemption claim.  *Id.*  The end date, by contrast, is the date on which the creditor "serve[s]" the motion papers.  *Id.*  To determine that end date, therefore, the Court looks to the requirements for service of motion papers under New York law.

Section 2103 of the C.P.L.R. describes the requirements for service of papers.  Because Mr. Aiyer is not represented by counsel, the Court looks first to C.P.L.R. § 2103(c), which provides that where, as here, "a party has not appeared by an attorney . . . service shall be upon the party by a method specified in paragraph one, two, four, five or six of subdivision (b) of this rule."  C.P.L.R. § 2103(b)(2) permits service by mail.  It provides that "service by mail shall be complete upon mailing[.]"  C.P.L.R. § 2103(b)(2).  A "mailing" is defined as

> the deposit of a paper enclosed in a first class postpaid wrapper, addressed to the address designated by a person for that purpose or, if none is designated, at that person's last known address, in a post office or official depository under the exclusive care and custody of the United States Postal Service within the United States[.]

C.P.L.R. § 2103(f)(1).  Thus, "[s]ervice of papers by mail is deemed complete upon deposit of such papers in the mail and such manner of service creates a presumption of proper mailing to the addressee."  *Vita v. Heller*, 467 N.Y.S.2d 652, 653 (2d Dept. 1983).

"A properly executed affidavit of service raises a presumption that proper mailing occurred." *Ortega v. Trefz*, 845 N.Y.S.2d 73, 74 (N.Y. App. Div. 2d Dept. 2007)); *Kihl v. Pfeffer*, 94 N.Y.2d 118, 122 (1999) (same); *Engel by Engel v. Lichterman*, 62 N.Y.2d 943, 944 (1984) (same); *see also W. Coast 2014-7, LLC v. Tolson*, No. 15-CV-6306(ADS)(GRB), 2017 WL 3405517, at *9 (E.D.N.Y. Aug. 7,

13

2017) ("affidavit [of service] establishes service by first-class mail, as a matter of law"). "A defendant's sworn denial of receipt of service, however, rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing." *Old Republic Ins. Co. V. P. Fin. Services of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002) (per curiam); *see also Guthrie v. Rainbow Fencing Inc.*, 349 F.R.D. 55, 64 (E.D.N.Y. 2025). However, "no hearing is required where the defendant fails to swear to specific facts to rebut the statements in the process server's affidavits." *Id.* at 58 (internal quotation marks and citation omitted); *see also Scarano v. Scarano*, 880 N.Y.S.2d 682, 717 (N.Y. App. Div. 2d Dept. 2009).

**B. Mr. Aiyer Has Not Rebutted the Presumption that Service Occurred on June 18, 2025**

Mr. Aiyer has not rebutted the presumption that Saregama's objection was served on June 18, 2025. For the purposes of this opinion, the Court accepts June 10, 2025 as the starting point of the eight-day service window under § 5222-a(d).[3] As a result, Saregama's objection was timely if it was served on June 18, 2025, which is the date stated in Saregama's certificate of service.

Saregama's certificate of service established a presumption that service was effectuated on June 18, 2025. In it, counsel affirmed that he "deposit[ed] [the objection] . . . in an official depository under the exclusive care and custody of the U.S. Postal Service" on June 18, 2025. Certificate of Service; Motta Decl. ¶ 4. Under New York law, service by mail is complete upon "deposit" in the mail. *See* C.P.L.R. §§ 2103(b)(2), 2103(f)(1); *see also Vita*, 467 N.Y.S.2d at 653.[4]

---

[3] In its Order, the Court used June 13, 2025 as the start date for the eight-day period prescribed by C.P.L.R. § 5222-a(d). Order at 1. That is because Plaintiff's counsel affirmed that he had received the exemption form on June 13, 2025. *See* Dkt. No. 3-1 ¶ 9, Dkt. No. 3-5 (shipping label from Mr. Aiyer, which does not indicate date of postmark); Dkt. No. 8-1 ¶ 2. The Court did not have information regarding the date on which the exemption form was postmarked. Mr. Aiyer did not provide information regarding the date on which his mailing was postmarked in his September 3, 2025 letter to the Court. Dkt. No. 10. For the first time, in support of his motion for reconsideration, Mr. Aiyer affirmed that the date of the postmark of his submission was June 10, 2025. Aiyer Decl. ¶ 4. For the purposes of this opinion, the Court accepts Mr. Aiyer's affirmation that his mailing was postmarked June 10, 2025 and, therefore, that June 10, 2025 should be used as the starting date for calculating the eight-day window for service of Saregama's objections.

[4] Mr. Aiyer argues that Saregama's reliance on *Greene*, 136 F.3d 313, is misplaced because that case interprets the

14

Moreover, an affirmation of service "raises a presumption that proper mailing occurred." *Ortega*, 845 N.Y.S.2d at 74. Accordingly, the Certificate of Service established a presumption that the objection was served on June 18, 2025.

Mr. Aiyer has not offered evidence that successfully rebuts the presumption of service. Mr. Aiyer argues that the USPS tracking log rebuts the presumption of service because it shows that USPS recorded that the item was "in [USPS] possession" on June 20, 2025. Mot. at 2-3; Aiyer Decl. at 4-5. However, New York courts consistently hold that a later date of postmark, without more, does not rebut the presumption that service occurred on an earlier date. *See, e.g.*, *Ortega*, 845 N.Y.S.2d at 74 (holding May 10, 2006 postmark to be insufficient to rebut presumption that motion was served on May 9, 2006); *Kings Park Classroom Tchrs. Ass'n v. Kings Park Cent. Sch. Dist.*, 63 N.Y.2d 742 (1984) ("In this case the postmark does not establish that service was not made on the earlier date stated in the affidavit of service."). Similarly, here, the fact that USPS recorded that it was "in possession" of the objection on June 20, 2025 does not rebut the presumption that the objection was served on June 18, 2025.

Moreover, Mr. Aiyer's argument that the eight-day period established in C.P.L.R. § 5222(d) ends on the date on which USPS recorded acceptance of the package asks the Court to rewrite the statute. The starting date for the eight-day window is the date on which the objections were "postmarked"—that is, the date on which the USPS formally acknowledged receipt of the filing.

---

requirement for service under Federal Rule of Civil Procedure 5(b), rather than the provisions of the C.P.L.R. at issue here. Reply at 2-3, 5-6. Mr. Aiyer is right in part: *Greene* applies the federal rule, while this case involves the application of New York state law. But Plaintiff's citation to *Greene* by analogy is not inappropriate. That is because under both New York and federal law, service by mail is complete upon deposit in the mail. *See Greene*, 136 F.3d at 315 (holding that, "service under Rule 5(b) is accomplished when the envelope is deposited at a post office or in a mail box."); *Vita*, 467 N.Y.S.2d at 653 (stating that, under state law, "[s]ervice of papers by mail is deemed complete upon deposit of such papers in the mail[.]"). Thus, the reasoning behind the Second Circuit's opinion in *Greene* applies here as well. The Court notes that in his September 3, 2025 letter to the Court, Mr. Aiyer argued that "under CPLR § 2103(f)(1) *and* Federal Rule of Civil Procedure 5(b)(2)(C), service by mail is complete upon deposit with the U.S. Postal Service, not when a mailing label is generated." Dkt. No. 10, at 2 (emphasis added). The argument presented in his objections—and his critique of Saregama's citation to *Greene*—is arguably inconsistent with his original position.

15

C.P.L.R. § 5222-a(d). By contrast, the end date is the date on which the objection is "serve[d]"—here, the date that it was deposited in the mail. The New York legislature established different triggers for the start and ending dates of the eight-day period, as Mr. Aiyer acknowledges. Accepting Mr. Aiyer's argument that the end date of the eight-day period could only be effectuated on the date on which USPS formally "accepted" receipt of the package—as opposed to the date on which it was delivered to the mail—would effectively rewrite the statute so that the end date would be determined based on the equivalent of a postmark, rather than by service.

The USPS tracking log does not rebut the presumption that Saregama's objection was served on June 18, 2025.[5] Thus, using June 10, 2025 as the starting date for the eight-day service window, the Court does not alter its conclusion that service of the objection was timely pursuant to C.P.L.R. § 5222-a(d).

### C. Modifications to Dates Stated in the Order

Mr. Aiyer has asked that the Court make two sets of changes to the Order under Federal Rule of Civil Procedure 60(a). First, Mr. Aiyer asked the Court to fix a typographical error in the Order. Mot. at 1-2. This is the sort of "clerical" error for which a correction is appropriate pursuant to Rule 60(a). *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1140 (2d Cir. 1994) (correction under Rule 60(a) appropriate where necessary "to reflect the actual intention of the court."). Therefore, the request is granted. The first sentence of the second full paragraph on page 2 of the Order should read as follows: "Plaintiff served the motion on both HSBC Bank and Aiyer on June 18, 2025—five days after receiving the exemption form." Order at 2.

Second, Mr. Aiyer has requested that the Court modify the Order to change the date of

---

[5] The Court agrees with Mr. Aiyer that the USPS Shipping Labels do not prove that service was effectuated on June 18, 2025. They merely state that the labels were printed on that date. USPS Shipping Labels at 2-3. But neither do they rebut the presumption established by the certificate of service that the package was deposited in the mail that day because they are not inconsistent with the facts stated in the certificate of service.

16

service to June 20, 2025 from June 18, 2025.  Relief under Rule 60(a) is not available to modify the service date because the Order does not contain a "clerical mistake" as to the service date.  *See* Fed. R. Civ. P. 60(a).  Rule 60(a) may be used to correct "a clerical mistakes or a mistake arising from oversight or omission . . . ."  Fed. R. Civ. Pro. 60(a).  The statement in the Order that "Plaintiff served the motion . . . on June 18, 2025" was not a clerical mistake.  Order at 2.  Nor did it arise from oversight or omission.  Therefore, the Court may not modify those sections of the Order under Rule 60(a).

Because Mr. Aiyer is a *pro se* litigant, the Court interprets his submissions "to raise the strongest arguments that they suggest."  *Triestman*, 470 F.3d at 474 (quoting *Pabon*, 459 F.3d at 248).  While couched as an application under Rule 60(a), which does not apply here, the request can be construed as arising instead under Rule 60(b)(1) ("mistake, inadvertence . . . ").  The requested relief is not available under that rule either, because, as described above, Mr. Aiyer has not rebutted the presumption that service was effectuated on June 18, 2025.  Therefore, there is no mistake warranting a modification of the Order.[6]

---

[6] Nor is Mr. Aiyer entitled to relief pursuant to Rule 60(b)(6).  Rule 60(b)(6) is not available where Rule 60(b)(1) is applicable.  *See Kemp*, 596 U.S. at 533.  Moreover, relief under Rule 60(b)(6) requires "extraordinary circumstances," which are not present here.  *Id.* (quoting *Liljeberg*, 486 U.S. at 863 n.11); *see also Buck v. Davis*, 580 U.S. 100, 124 (2017) (Rule 60(b)(6) relief appropriate to reopen a judgment, where failure to do so would "injure[] not just the defendant, but the law as an institution, . . . the community at large, and . . . the democratic ideal reflected in the processes of our courts.") (quoting *Rose v. Mitchell*, 443 U.S. 545, 556 (1979)).

V.    CONCLUSION

For the reasons stated above, Defendant's motion for reconsideration is DENIED, and

Defendant's request for factual corrections is GRANTED in part and DENIED in part.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 14.

SO ORDERED.

Dated: December 3, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge